IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JONATHAN KIMO SANTIAGO,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF HAWAIʻI, COUNTY OF HAWAIʻI – HAWAIʻI POLICE DEPARTMENT, BRYSON MIYOSE, and KIMO VEINCENT, in their official and individual capacities,<br><br>Defendants. | CIVIL NO. 16-00583 DKW-KSC<br><br>**ORDER DENYING DEFENDANT KIMO VEINCENT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS** |

**INTRODUCTION**

Defendant Veincent moves for reconsideration of the Court's December 20, 2017 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment on All Claims ("12/20/17 Order") based upon manifest error of law. Dkt. No. 128.[1] Veincent contends that the Court erred in denying him qualified immunity, incorrectly finding that the force used to arrest Santiago was unconstitutional and in violation of clearly established law at the time of the

---

[1]Pursuant to Local Rule 7.2(e), the Court finds this matter suitable for disposition without a hearing.

incident.  Vincent also asserts that he had no duty to retreat to avoid what he refers to as Santiago's assault.  Because no manifest error is evident, Veincent's Motion for Reconsideration is DENIED.

## STANDARD OF REVIEW

Local Rule 60.1 allows a party to file a motion for reconsideration of an interlocutory order.  Reconsideration is permitted only where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of law or fact."  LR 60.1; *see Sierra Club, Hawaii Chapter v. City & Cty. of Honolulu*, 486 F. Supp. 2d 1185, 1188 (D. Haw. 2007).

A "motion for reconsideration must accomplish two goals.  First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision.  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996).  Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.  *See Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  *White v.*

*Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (quoting *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

## DISCUSSION

I. **The Court Did Not Err In Denying Veincent Qualified Immunity Based Upon Clearly Established Fourth Amendment Law**

As a preliminary matter, the Court rejects Veincent's mischaracterization of the summary judgment record. In determining Defendant's Motion for Summary Judgment, the Court adopted the version of the facts advanced by Santiago, the party challenging the application of qualified immunity. Veincent's Motion for Reconsideration, however, impermissibly reframes the record, referring several times to Santiago as "drunk," "aggressive," and as posing a "risk to the officers' safety." *See* Mem. in Supp. at 3, Dkt. No. 128-1.[2] This was not the summary judgment record relied upon by the Court and does not now constitute a basis for reconsideration.[3]

---

[2]Veincent opines that "the facts demonstrate the police were confronted with a drunk and aggressive man. Although he was not physically assaulting Linda Leong when the police arrived, Santiago posed a significant risk to the officers' safety. Santiago's drunken, irrational and aggressive behavior demonstrate that he had the capability and propensity to hurt the police officers." Mem. in Supp. at 3 (footnoted omitted). *See also id*. at 9–10 (describing Santiago as "drunk" and "previously threaten[ing] officers with a rock and in close proximity"). Veincent's conclusions are possible only if the Court views the evidence in the light most favorable to the Officers—the moving parties. This standard is contrary to law.

[3]The Court acknowledged in the 12/20/17 Order that key facts are in dispute and that Defendants' version may ultimately prevail. But these disputes, which Defendants do not wish to fully

3

Turning to his first argument, Veincent asserts that "[r]econsideration is warranted because the Court erroneously denied qualified immunity finding the law was clearly established at the time of the incident. In doing so, this Court relied upon a case which was issued *after* the incident as well as cases outside of the Ninth Circuit, and ignored other Ninth Circuit case law which found such force was minimal and constitutional." Mem. in Supp. at 2, Dkt. No. 128-1. Despite Veincent's present quarrels with the cases relied upon in the Court's 12/20/17 Order,

---

acknowledge, cannot be resolved on this summary judgment record. *See* 12/20/17 Order at 22–23; *see also id.* at 24 ("While there is certainly some evidence that strongly suggests the appropriate level of force was used by all officers concerned, there are disputes of fact that cannot be resolved through the assessment and weighing of credibility on summary judgment."). For purposes of clarity, the Court again notes that in Santiago's recounting, he did not act in the intoxicated, aggressive, or threatening manner described by the Officers at the time of his November 1, 2014 arrest. Rather, the Court found, in part, as follows—

> Adopting Santiago's version of events, it is not clear that he did, in fact, present an immediate threat of harm to the Officers. According to Santiago, he was conversing with Kaili-Leong about an old injury that Santiago had suffered the previous week when Veincent "false-cracked" him, or hit from behind, without any provocation. Although Veincent may have subjectively believed that Santiago was going to head butt Kaili-Leong, which prompted Veincent's sudden action, Santiago disputes that he was even uncooperative, much less threatening. *See* Veincent Decl. ¶ 14; *see also* Pl.'s CSOF ¶ 1 (admitting Defs.' CSOF ¶¶ 52–56, specifically, that Veincent told him contemporaneously that he "thought [Plaintiff] was going to head-butt the other officer"); Dkt. No. 103. When considering whether there was an immediate threat, "a 'simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Mattos v. Agarano*, 661 F.3d 433, 441–42 (9th Cir. 2011) (en banc) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001)). Such objective factors are absent—at least, in Santiago's retelling of events.

12/20/17 Order at 32–33, Dkt. No. 123. Veincent points to no manifest error of fact or newly discovered evidence to disturb Santiago or the Court's factual recounting. His mere disagreement with the facts is not a basis for reconsideration.

4

however, he offers "no law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson*, 947 F. Supp. at 430.

The 12/20/17 Order stated, in relevant part:

> Viewing the evidence in the light most favorable to Santiago, the Court finds that the Officers had "fair warning" that the force used "was constitutionally excessive even absent a Ninth Circuit case presenting the [identical] set of facts." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1061 (9th Cir. 2003). A reasonable police officer could not properly believe that the use of the level of force—as alleged by Santiago—would not violate a clearly established constitutional right. *See Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established *prior to 2008*.") (citations omitted); *see also Westfahl v. D.C.*, 75 F. Supp. 3d 365, 374 (D.D.C. 2014) ("Striking a passive arrestee to compel affirmative compliance is a clearly established constitutional violation.");[4] *Millbrooke v.*

---

[4]Veincent faults the Court for relying, in part, upon *Westfahl v. D.C.*, 75 F. Supp. 3d 365, 374 (D.D.C. 2014), because the decision issued on December 12, 2014, after Santiago's November 1, 2014 arrest. *See* Mem. in Supp. at 7 n.6. The Court acknowledges that the decision in *Westfahl* post-dates the events at issue. The principle of law that it summarizes, however, restated clearly established, existing law from other circuits. In the interest of clarity, the Court includes the full list of citations upon which *Westfahl* relied to provide a fuller picture:

> Whether Officers Cory and Robinson are protected by qualified immunity for striking Westfahl as he was lying on the ground turns on whether Westfahl actively struggled after Officer Robinson brought him to the ground. The officers allege that Westfahl was swinging his arm around to avoid handcuffing. Robinson Depo. 71:22–72:13; Cory Depo. 33:3–22. But Westfahl says he was lying passively with his arm pinned under him, Westfahl Depo. 58:14–59:12, and the video, while unclear, appears to support his testimony, Video 3:30–45. Striking a passive arrestee to compel affirmative compliance is a clearly established constitutional violation. *Johnson v. District of Columbia*, 528 F.3d 969, 974–75 (D.C. Cir. 2008); *Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013), *cert. denied*, ––– U.S. ––––, 134 S.Ct. 1292, 188 L.Ed.2d 301 (2014); *Poole v. City of Shreveport*, 691 F.3d 624, 640 (5th Cir. 2012); *Phillips v. Cmty. Ins. Corp.*, 678

> *City of Canby*, 2013 WL 6504680, at *10 (D. Or. Dec. 11, 2013) ("A reasonable officer should know that the Fourth Amendment prohibits him from taking a civilian violently to the ground without provocation[.]").

12/20/17 Order at 37–38, Dkt. No. 123. Veincent takes issue with the particular cases cited by the Court in this paragraph to demonstrate that the law was clearly established at the time of the incident. The Court, however, did not err.

The Court acknowledged in its Order that Santiago has the burden under the second prong of qualified immunity to point to case law indicating that the right allegedly violated was clearly established. And the Court also acknowledged that Santiago's pleadings fell short of identifying a specific case to satisfy the standard required by *White v. Pauly*, 137 S. Ct. 548 (2017). *See* 12/20/17 Order at 38 n.15. The Court notes that, "[e]xcept in the rare case of an 'obvious' instance of constitutional misconduct . . . [Santiago] must *identify* a case where an officer acting under similar circumstances as [Veincent] was held to have violated the Fourth Amendment." *Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (quoting *White*, 137 S. Ct. at 552). "To achieve that kind of notice, the prior precedent must be controlling—from the Ninth Circuit or Supreme Court—or otherwise be

---

F.3d 513, 525 (7th Cir. 2012); *Meirthew v. Amore*, 417 Fed.Appx. 494, 499 (6th Cir. 2011). Accordingly, Officers Cory and Robinson are not entitled to qualified immunity and Westfahl's claims against them can proceed.

*Westfahl*, 75 F. Supp. 3d at 374.

embraced by a 'consensus' of courts outside the relevant jurisdiction." *Id.* (internal citation and quotation omitted); *cf. Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) ("We begin our inquiry by looking to binding precedent[;] [i]f the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end. In the absence of binding precedent clearly establishing the constitutional right, we look to whatever decisional law is available . . . including decisions of state courts, other circuits, and district courts.") (citations and some quotations marks omitted).

Veincent argues that Santiago, proceeding pro se, failed to point to binding case law establishing that the "minimal force" used against a plaintiff who was "drunk" and "threatened the officers with a rock" violated his rights. Mem. in Supp. at 8. Veincent's characterization of the factual circumstances is disputed. On summary judgment, Santiago does not have the burden under the second prong of the qualified immunity analysis to point to case law establishing a violation of his rights based on *Veincent's version of the facts*. In this vein, the Court rejects the argument that "nothing in *Gravelet-Blondin* would have alerted Officer Veincent that an individual who was drunk, previously threatened officers with a rock and in close proximity, could not be grabbed and taken to the ground in order to safely effectuate an arrest." Mem. in Supp. at 9-10. Instead, as noted in the 12/20/17 Order, the Court cited *Gravelet-Blondin* for its accurate summary of the law in this

Circuit: "The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." 12/20/17 Order at 37 (citing *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)).

Moreover, circuit cases pre-dating *Gravelet-Blondin* clearly establish that officers violate the Fourth Amendment by using any amount of force where none is called for. In such circumstances, the violation may be obvious. *See Sharp*, 871 F.3d at 911 ("It is true that in a sufficiently 'obvious' case of constitutional misconduct, we do not require a precise factual analogue in our judicial precedents").[5] The Ninth Circuit summarized analogous case law as follows in 2011, before the relevant events at issue here—

> Relying upon [clearly] established law, we held in [*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007)], that police officers violated Fourth Amendment principles that were clearly established by 2001, the time at which they gang-tackled an individual who was suspected of trespassing and disobeyed an officer's order to kneel down and be handcuffed. 485 F.3d at 468, 479. We noted that "the severity of the alleged crime, misdemeanor trespass, was minimal," *id*. at 478, that a jury could conclude the suspect "did not pose a serious threat to the officers' or others' safety," *id*., and that, notwithstanding the

---

[5]*See also Sharp*, 871 F.3d at 911 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) ("[I]n an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law."); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."); *United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[I]n [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful[.]") (internal quotation marks and alteration omitted)).

8

suspect's refusal to kneel down, a jury could conclude he was not actively resisting arrest, *id*. at 479. On the basis of those observations we held that a rational jury "could conclude the gang tackle was unreasonable under the circumstances," *id*. at 478, and thus violated the suspect's Fourth Amendment rights.

What is more, we held that the officers in *Blankenhorn* were not entitled to qualified immunity because *Graham*'s reasonableness standard provided them with notice that their conduct was unconstitutional. We explained that,

> [i]n assessing the state of the law at the time of Blankenhorn's [2001] arrest, we need look no further than *Graham*'s holding that force is only justified when there is a need for force. We conclude that this clear principle would have put a prudent officer on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect—especially one who had been cooperative in the past and was at the moment not actively resisting arrest—was a violation of that person's Fourth Amendment rights.

*Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1167–68 (9th Cir. 2011) (quoting *Blankenhorn*, 485 F.3d at 481) (emphasis added).[6]

The principle that it is unreasonable to use more than trivial force against an individual who was suspected of a misdemeanor crime, posed no immediate threat to

---

[6] In the 12/20/17 Order, the Court relied upon the holding in *Young* at *Graham*'s third step, in balancing the gravity of the intrusion on Santiago's Fourth Amendment rights against the Defendants' need for that intrusion, stating as follows: "Adopting the factual scenario presented by Santiago, the Court finds that Veincent's use of force under these circumstances does not outweigh the gravity of the intrusion and violated Santiago's rights under the Fourth Amendment." 12/20/17 Order at 36 & n.14 (citing *Young v. Cty. of L.A.*, 655 F.3d 1156, 1165 (9th Cir. 2011) ("When, as here, a suspect's disobedience of a police officer takes the form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others, it will not, without more, give rise to a governmental interest in the use of significant force.") (some citations omitted).

9

officer safety, and could be found no more than to have passively resisted arrest, was thus well-established in 2001, years before the events at issue in this case. *Accord Redmond v. San Jose Police Dep't*, 2017 WL 5495977, at *21 (N.D. Cal. Nov. 16, 2017) ("Long before 2013, [*Graham*, *Blankenhorn*, and *Young*], made clear to a reasonable officer that using force (including punching) against a suspect who did not commit a serious crime, did not pose a threat, and did not resist arrest or attempt to flee is objectively unreasonable under the Fourth Amendment.").[7]

These cases illustrate clearly why Veincent is not entitled to summary judgment. At the time he was confronted by law enforcement, Santiago had done nothing other than knock over his ex-girlfriend's mailbox, cause minor damage to her rock wall with his vehicle, and enter her yard by climbing the fence. He did not assault or threaten her or anyone else. Nor at least according to Santiago, was he resisting arrest, acting aggressively or belligerently, or presenting a danger to the officers or anyone else. He was having a conversation with another officer, answering that officer's questions, when Veincent suddenly came up from behind and, without warning, threw him to the ground, unprovoked, with such force that it

---

[7]The district court in *Redmond* denied summary judgment to the officer based, in part, upon plaintiff's testimony that the officer "came charging at her as soon as she got out of the car and proceeded to stomp on her foot, punch her in the face, pull her up by her hair, wrench her arm behind her back and shove her to the ground again before he ultimately placed her in handcuffs. [The officer] of course gives a different account, but the factual disputes surrounding the encounter prevent the Court from parting from the clear guidance in [*Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir. 2007)]." 2017 WL 5495977, at *19 (some citations omitted).

dislodged two of Santiago's teeth.  In other words, Veincent employed more than minimal force where even minimal force was not required.  Under these circumstances, Veincent has failed to meet his burden and has demonstrated no clear or manifest error in law or fact compelling this Court to reverse its prior decision regarding qualified immunity.

## II. The Court Neither Found That Veincent Had a Duty to Retreat Nor Erred By Considering the Availability of Alternative Methods Among Other Factors to Determine Whether the Use of Force Was Reasonable

Veincent next argues that the "Court also erred when it denied Officer Veincent qualified immunity because he could have 'stepped back' from Santiago. Such a retreat by police officers would be unwise, contrary to their public duty and is unsupported by case law."  Mem. in Supp. at 2, Dkt. No. 128-1.  The Court, however, did not deny qualified immunity to Veincent because he could have stepped back nor did it decree that he had a duty to retreat.  To the contrary, as part of its consideration of the *Graham* factors, the Court properly stated—

> the Ninth Circuit has recognized that "although officers are not required to use the least intrusive degree of force possible, the availability of alternative methods, is a relevant factor in determining whether the amount of force used in a particular instance was, in fact, reasonable." *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012) (citations and internal quotation marks omitted).  The Court acknowledges that the facts are in dispute regarding whether Santiago stumbled or was "slammed" to the ground by Veincent, dislodging Santiago's teeth. However, at least from the point in time when he was already subdued and handcuffed, it appears that Officer Veincent could

> reasonably have altered tactics by simply stepping away from Santiago, particularly with the aid of his fellow officers in the proximate vicinity, which would have minimized or even eliminated the need for the employment of additional force.

12/20/17 Order at 35. That is, the Court permissibly considered as one factor among others when balancing the competing interests, "the availability of alternative methods . . . in determining whether the amount of force used in a particular instance was, in fact, reasonable." *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). It was not manifest error for the Court to do so.[8]

Equally troubling is Veincent's assertion that the Court imposed upon him a duty to retreat at the point in the course of the arrest when (1) Santiago was already handcuffed; and (2) at least two other officers were in his immediate presence. Despite these circumstances, Santiago testified that Veincent "threw me down on the ground [for the second time], and then he stepped on my back, and make sure I stay down . . . and then I went unconscious." 12/20/17 Order at 31 (quoting 6/20/17

---

[8]Moreover, the Court is not limited to the *Graham* factors, and may also consider whether less intrusive options were available to Veincent in the course of arresting Santiago. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1165–66 (9th Cir. 2011). The Ninth Circuit reasoned in *Young* that "it is rarely necessary, if ever, for a police officer to employ substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any apparent threat to officer of public safety." *Id*. at 1167–68. *Young,* for example, looked at whether less intrusive options were available to the officer before using pepper spray, such as warning the plaintiff "that he would be placed under arrest," warning the plaintiff "that disobedience would lead [the officer] to use force" to effect the plaintiff's arrest with handcuffs, or calling for "assistance as he apparently did in order to summon [another officer] to the scene." *Id*. at 1165–66.

Santiago Dep. Tr. at 34–42). The Court's Order described this point in time as follows:

> When Santiago continued to challenge Veincent after being handcuffed, yelling and spitting blood in his face, Veincent took Santiago down to the ground a second time by grabbing his arm and wrists, and holding him down with a foot. Viewing the circumstances in the light most favorable to Santiago, however, it is not clear that a reasonable officer would have perceived him to be an immediate threat, given that Santiago had at that point been handcuffed, did not have any weapons at his disposal, and Veincent was accompanied by at least two other officers. *See Longoria v. Pinal Cty.*, 873 F.3d 699, 705 (9th Cir. 2017) ("the inquiry is thus whether he posed an immediate threat to [the officer] or the many officers around him, or whether a reasonable officer would have perceived [the suspect] to be an immediate threat").

12/20/17 Order at 33–34 (footnote omitted).

The Court, in other words, imposed no "duty to retreat" and did not deny qualified immunity on the basis that Veincent "could reasonably have altered tactics by simply stepping away from Santiago." Mem. in Supp. at 12 (quoting 12/20/17 Order at 35). Asserting otherwise mischaracterizes the Court's Order. Rather, after carefully "balanc[ing] the gravity of the intrusion on Santiago's Fourth Amendment rights against the Defendants' need for that intrusion," and "viewing the totality of evidence in the light most favorable to Santiago," 12/20/17 Order at 36, the Court found that "level of force resulted in more than a minimal intrusion on Santiago's rights [that] was not justified by the governmental interest in subduing an

13

allegedly compliant trespasser, who could very well have been dispersed or apprehended by less forceful means." *Id.* Indeed, Santiago had already been apprehended in the presence of other officers when Veincent opted to use his takedown tactics for a second time. Veincent was not entitled to qualified immunity for the "second takedown" when the Court issued its initial summary judgment order and that remains the case today.

## **CONCLUSION**

For the foregoing reasons, Defendant Veincent's Motion for Reconsideration is DENIED.

IT IS SO ORDERED.

DATED: January 9, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Santiago v. Cty. of Haw. et al.*; CV 16-00583 DKW-KSC; **ORDER DENYING DEFENDANT KIMO VEINCENT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**